*UNITED STATES DISTRICT COURT*
*DISTRICT OF MASSACHUSETTS*

|  |  |
|---|---|
| GARY J. LONCZAK,<br><br>                           Plaintiff,<br><br>vs.<br><br>CALLAWAY GOLF BALL<br>OPERATIONS, INC.,<br><br>                     Defendant. | CIVIL ACTION NO. 05-30180- KPN<br><br><br>**DEFENDANT'S PARTIAL OPPOSITION<br>TO PLAINTIFFS' MOTION TO<br>CONSOLIDATE** |

## I. Introduction

Plaintiff and three other former exempt employees who worked at the Chicopee

facility of the Defendant, Callaway Golf Ball Operations, Inc. (f/k/a The Top-Flite Golf

Company) has brought the above captioned claim asserting that his selection for layoff

in 2004 violated the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq.

("ADEA").  None of the Plaintiff's have alleged a pattern and practice claim, or claimed

that there demise was the result of a facially neutral policy that had a disparate impact

on older employees in violation of the A.D.E.A.[1]  Indeed, it is clear from the uncontested

materials submitted at summary judgment that the 2004 layoffs actually slightly *raised*

the age of the exempt Chicopee workforce.

---

[1] The Supreme Court, in <u>Smith v. City of Jackson, Miss</u>.,  544 U.S. 228, 229, 125 S.Ct. 1536, 1538 (U.S.,2005) indicated that a form of disparate impact somewhat narrower in scope than that under Title VII was applicable under the A.D.E.A.  However, it also stressed that in pursuit of such a claim the Plaintiff must identify a specific test, requirement, or practice that has an adverse impact on older workers.

As the Supreme Court pointed out in <u>Raytheon Co. v. Hernandez,</u> 540 U.S. 44, 52-53, 124 S.Ct. 513, 520 (U.S.,2003) "[b]ecause "the factual issues, and therefore the character of the evidence presented, differ when the plaintiff claims that a facially neutral employment policy has a discriminatory impact on protected classes, [as opposed to an individual disparate treatment claim] courts must be careful to distinguish between these theories" (citations omitted).  Unlike disparate impact cases, disparate treatment cases require proof of a subjective intent to discriminate.[2]  Thus, in order to prevail each Plaintiff would have to prove that in his case it was his age that actually motivated the decision maker to lay him off.  It is clear from the pleadings and facts that each of the four cases involves solely a claim of disparate treatment based on age.

Each of the four Plaintiffs have now moved to consolidate their individual case for trial with the three other Plaintiffs.  By and through its counsel Skoler, Abbott & Presser, P.C., submits this Partial Opposition to Plaintiffs' Motion to Consolidate.  Defendant requests the court to deny Plaintiff's Motion to Consolidate the four cases into one trial.  Consolidation of four disparate treatment cases, for the reasons elaborated upon below, is not justified when, as is clear here, the decisions being challenged as discriminatory were not made by the same decision maker, and in one case at least, the decision was

---

[2] <u>Raytheon Co. v. Hernandez</u>  540 U.S. at 52-53, 124 S.Ct. 519:

This Court has consistently recognized a distinction between claims of discrimination based on disparate treatment and claims of discrimination based on disparate impact…Liability in a disparate-treatment case "depends on whether the protected trait ... actually motivated the employer's decision." *Id.,* at 610, 113 By contrast, disparate-impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." Under a disparate-impact theory of discrimination, "a facially neutral employment practice may be deemed [illegally discriminatory] without evidence of  the employer's subjective intent to discriminate that is required in a 'disparate-treatment' case."

Citations omitted.

reached months later by an individual not even employed when the first three were laid off.

Defendant acknowledges that the policies regarding consolidation of trials does support consolidating for trial the cases of Michael Behaylo (Case No. 05-30178-KPN) and John Bettencourt (Case No. NO. 05-30179-KPN) with each other. [3]  Thus, the decision to layoff both of these two Cost Accountants was made by the same decision maker, at the same time, for largely similar reasons.  The testimony explaining the decision while not identical, will substantial overlap.  Moreover, Plaintiffs' presumed evidence attempting to prove pretext will likely be the substantially the same in both instances.  Moreover, and more importantly, it would not appear that consolidating the trial of those two would prejudice either party or result in the court having to make evidentiary rulings that might be appropriate vis a vis one Plaintiff while potentially constituting reversible error vis a vis another plaintiff.  Thus, Defendant does not oppose the consolidation of those two cases for purposes of trial.

However, the consolidated trial of the cases of the two Cost Accountants should not be further consolidated for trial with the trials of Paul Duval, selected for lay-off by a different decision-maker, at a different time) and/or the trial of John Lonczak, who was laid-off for entirely different reasons by a different decision-maker.  As discussed below the crucial and disputed facts are not common to the three cases.  Moreover, even if they were, any potential economy to the Court resulting from consolidation would more than be outweighed by the extreme prejudice to the Defendant should the Court

---

[3]  Given the Defendant's lack of opposition to the trials of the two cost accountants, hereinafter when the term consolidation is used it is meant to refer to the consolidation of the dual Cost Accountant case with either or both of the other cases, or separately, the consolidation of the Lonczak and Duval cases with each other.

proceed in such a fashion.  And, any potential gains in economy resulting from a

consolidation would immeasurably increase the risk of a mistrial, since, as discussed

below, there is likely to be testimony that arguably might be admissible in one case that

would clearly be error to admit in another.  Such a dilemma could not be resolved by a

putative, and wholly unrealistic instruction to the jury to disregard evidence admitted as

relevant to one Plaintiff's case when assessing the validity of a different Plaintiff's claim

## II. Standards for Consolidation

A court *may* grant consolidation where separate actions involve a common

question of fact or law. Fed. R. Civ. P. 42(a).  However, although sharing a common

question of fact or law is a prerequisite to consolidation under Rule 42(a), the mere

existence of such commonalities does not mandate consolidation.  *See* Walker v. H.

Council Trenholm State Technical College, 2007 WL 1140423, *2 fn.6 (M. D. Ala. April

17, 2007)("… a common question exists does not mean that consolidation is

mandatory."); Kelly v. Kelly, 911 F.Supp. 66, 69 (N.D.N.Y. 1996)("Where there is a

common question of fact or law, cases may be joined in the interest of efficiency, but

consolidation is by no means a necessity."); Arroyo v. Chardon, 90 F.R.D. 603, 605

(D.P.R. 1981).

Rather, even when there are common questions of fact and law, "[c]onsiderations

of convenience and economy must yield to a paramount concern for a fair and impartial

trial.") Johnson v. Celotex Corp., 899 F.2d 1281, 1285 (2nd Cir. 1990) (*citations*

*omitted*). Thus, a district court must weigh the costs and benefits of consolidation while

being "most cautious not to abuse his [or her] judicial discretion and to make sure that

the rights of the parties are not prejudiced by the order of consolidation under the facts

and circumstances of the particular case." <u>Walker</u>, 2007 WL 1140423 at 1 (*quoting*

<u>Dupont v. Southern Pac. Co.</u>, 366 F.2d 193, 196 (5th Cir. 1966)); *see also* <u>Seguro de</u>

<u>Servicio de Salud de Puerto Rico v. McAuto Systems Group, Inc.</u>, 878 F.2d 5, 8 (1st Cir.

1989)(consolidation should be denied where "the party opposing it can show

'demonstrable prejudice.'")(*citations omitted*); fair and impartial trial.")(*citations omitted*).

### III. Consolidation Is Not Justified And Would Be Unduly Prejudicial

#### A. The Absence of Common Issues of Fact Warrants Denial of the Motion

The "common facts" in these cases are in reality, undisputed.  Thus, the financial

problems of Spalding, the sale of most of Spalding's businesses in the Spring of 03, the

bankruptcy, the asset sale, creation of a new company, and the losses suffered by the

new company in the fall of 2003 and spring of 2004 are all clear and seemingly

undisputed.  The numbers of individuals terminated and the respective ages are clear

and undisputed.  Presumably, compliance with the Court's pretrial orders will lead the

party to agree to many of these common facts, and it may be that little testimony will be

required as to these "common facts".

In contrast to those background facts, the unique factual circumstances that exist

with regard to each of the four Plaintiffs weigh heavily against consolidating the four

cases into one trial.  Thus, after the undisputed financial reason to have the reductions

in force are established, the real factual issue, in each case, is why this particular

Plaintiff was selected as amongst those to be laid-off when he was.  That does not

present common fact.  Rather, the cases sharply diverge at several key issues that are

central to each individual Plaintiff's claim of discrimination.

To begin with, the four Plaintiffs each had separate and distinct employment histories and each held different positions, performing dramatically different functions, within at the time of their terminations.  Indeed, while all were four were laid-off due to a general need to reduce costs in light of large financial losses, the specific asserted reasons each was selected are distinct for each individual.  Thus, Gary Lonczak was laid-off, the Company maintains, because at the time the Company believed that all responsibility for the Ben Hogan Golf Club assembly work would be consolidated in California, under Callaway, within a few months.  The Cost Accountants were laid-off because Andrew Kelleher believed that there was only a need for one Cost Accountant, and he therefore laid-off the three younger cost accountants.  Paul Duval was laid-off because Bosworth, not long after he arrived, decided that there was in fact no need for a dedicated person to perform the type of sales support duties Duval was performing. These decisions were all made by different decision makers. [4]

Similarly the evidence would differ as whether any plaintiff was "replaced", as the term is used in reduction in force cases under the A.D.E.A.  Thus, Duval claims he was replaced by Reid Gorman, hired shortly before his layoff.  Lonczak claims he was "replaced" when Defendant used a different employee, Roseanne Turner, to cover for Ben Hogan Golf Club tasks that he had been doing, at least for some period of time. The Cost Accountants claim that they were "replaced" by a new college graduate, hired to perform some cost accounting functions months after their own layoffs.  In each case the jury will need to determine whether the so-called replacement performed the same

---

[4] Andrew Kelleher made the decisions regarding Behaylo and Bettencourt, but was not involved with the other terminations.  Tom Frye was involved with the decision to terminate Lonczak only.  And the decision to terminate Duval involved Jaime Bosworth who was not even employed by Defendant at the time the others were selected for layoff.

work, and other individualized issues, in order to determine whether the Plaintiff was, as claimed, replaced by a younger employee.

Moreover, even as to damages, the testimony will be entirely different for each Plaintiff, not only as to each plaintiff's actual interim earnings, but as to projected earnings and whether the period for back pay ended in 2005, and if so when in 2005.[5]

Defendant is entitled to have a jury decide whether, in each case, whether its asserted lawful asserted reason was pretextual independently, unaffected by whether jurors believe that one of the other decision-makers is "not worthy of belief".  Jurors in one trial should not be expected to perform the impossible task of keeping these key issues separate in their minds while at the same time preventing facts relating to one Plaintiff from influencing deliberations the other cases.  In granting a motion to sever five employment discrimination claims under Fed. R. Civ. P. 42(b), for similar reasons one federal court judge aptly stated:

> [a] single trial would require the jury to keep separate each plaintiff's individualized claim and work history, presenting the jury with the "hopeless task of trying to discern who did and said what to whom and for what reason." Moorhouse v. Boeing Co., 501 F.Supp. 390, 392 (E.D.Pa.1980).  The jury may simply resolve the confusion by considering all the evidence to pertain to all the plaintiffs' claims, even when it is relevant to only one plaintiff's case. **There is tremendous danger that one or two plaintiff's unique circumstances could bias the jury against defendant generally, thus prejudicing defendant with respect to the other plaintiffs' claims. The need to focus the jury's attention on the merits of each individual plaintiff's case counsels against proceeding with these cases in one consolidated trial. Thus, the court concludes that it would be extremely prejudicial to the defendant if the claims of the plaintiffs are tried jointly**.

---

[5] Thus, the Court has essentially deferred ruling on Defendant's assertion, made in the summary judgment motion that any back pay stopped in 2005, because each would have lost their job at that time if not in 2004. For purposes of this motion, it is sufficient to note that even the testimony on that point would differ for each Plaintiff.  Thus, for example, in June of 2005, Duval's purported replacement Reid Gorman was terminated when Callaway decided to entirely eliminate the Chicopee based sales force and function.  In contrast, Turner continue to perform some work on the Ben Hogan line, albeit unexpectedly, through November 2005.

Bailey v. Northern Trust Co., 196 F.R.D. 513, 518 (N. D. Ill. 2000) (emphasis added);

*see also* Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir. 2000)(upholding

severance in ADEA claim based on jury confusion where "the jury would have had to

examine individually [each Plaintiff's] employment history as well as the explanations

given by Quaker for not retaining him or her, explanations that would require the

testimony of each employee's supervisors and raters."); Walker, 2007 WL 1140423 at 4

("parallel presentation in a joint trial of the alleged various discriminatory acts has the

potential of confusing the jury and negatively impacting its ability to weigh and consider

impartially and separately the evidence presented in each case."); Bernardi v. City of

Scranton, 101 F.R.D. 411, 414 (M. D. Pa. 1983)(court denied motion to consolidate in

employment discrimination cases that involved five plaintiffs, holding four different

positions, that were terminated on three different dates).

      B. Consolidated Trial, the Ultimate "Me Too" Testimony, Would be Unduly
Prejudicial

      Besides the prejudice of having the jury deliberations regarding one Plaintiff

tainted by the testimony relating to others (as well, possibly, as their perceptions of

other plaintiffs and decision-makers) consolidation of the cases would be highly and

unfairly prejudicial to Defendant for the same reason that so called "me too" testimony is

often found unduly prejudicial and inadmissible.  There is a split amongst the circuits but

most circuits either hold such evidence completely irrelevant[6] or requiring district judges

---

[6] *See* Haskell v. Kaman Corp., 743 F.2d 113 (2d Cir. 1984); Wyvill v. United Companies
Life Ins. Co., 212 F.3d 296 (5th Cir. 2000); Williams v. Nashville Network, 132 F.3d 1123 (6th Cir.
1997); Moorhouse v. Boeing Co., 501 F.Supp. 390 (E. D. Pa. 1980), *aff'd*, 639 F.2d 774 (3rd Cir.
1980).

to carefully individually assess such evidence under Fed. R. Ev. 403[7].

Recently, the Tenth Circuit Court has found that a District Court Judge erred by excluding such testimony, but that ruling resulted in the Supreme Court granting certiorari to address the question.  *See* Sprint/United Management Co. v. Mendelsohn, 466 F.3d 1223 (10th Cir. 2006), *cert. granted,* __ U.S. __, 127 S.Ct. 2937, 168 L.Ed.2d 261 (June 11, 2007).  While these cases are likely to proceed before the Supreme Court rules, it is obvious should the Supreme Court ban or significantly limit such testimony, allowing such testimony here to the extent greater than ultimately permitted by the Court might result in prejudicial error.

The Plaintiff's here are four of literally hundreds of employees throughout the country laid off as a result of the corporate-wide changes that resulted in the bankruptcy of the company that they had each worked for, and its acquisition by a new owner.  In Chicopee alone, hundreds of exempt employees of all ages have been laid off as a result of the same issues that affected these plaintiffs.[8]  None of the many younger employees laid off will be sitting at counsel table throughout the trial.  Having a single jury hear all four cases, with each Plaintiff sitting in court throughout the trial, with each presenting his own individualized case, would be the ultimate "me too" testimony, creating the inevitable *misperception,* given the fact that there is no evidence that the layoffs disproportionately affected older employees, that there was systematic age

---

[7] *See* Schrand v. Federal Pacific Electric Co., 851 F.2d 152 (6th Cir. 1988); Hunter v. Allis-Chalmers Corp., 797 F.2d 1414 (7th Cir. 1986).
    [8] Thus, the April 2004 layoff alone effected 41 Chicopee based office employees. Indeed, more than two-thirds of the office positions in existence when in Chicopee when the layoffs began remain.

discrimination.[9]

      C.  If the Cases Are Consolidated the Court Will Face Untenable Evidentiary Rulings

If these cases were consolidated it would likely be impossible for the court to make appropriate individualized rulings on the admissibility of evidence without unfairly prejudicing one or the other party.  Evidence that may be admissible in one case may be irrelevant and unduly prejudicial in another.

Thus, it is clear that to considerable degree (if not totally) Plaintiffs' claims rest on an assortment of alleged remarks and comments and, possibly, other personnel actions.  When ruling on the admissibility of such evidence the Court will need to carefully review the relevance each alleged comment to the specific decision being challenged to determine whether it is relevant, and if relevant, whether the proffered testimony would be unduly prejudicial under F.R.E. Rule 403.

Thus, statements by non-decision makers may be admissible as relevant to one plaintiff but not to others. To appropriately make such rulings "…the courts must carefully evaluate factors affecting the statement's probative value, such as "the declarant's position in the corporate hierarchy, the purpose and content of the statement, and the temporal connection between the statement and the challenged employment action," Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 133 (3d Cir.1997), cert. denied, 522 U.S. 1116, 118 S.Ct. 1052, 140 L.Ed.2d 115 (1998).  *See also,* Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 357 (6th Cir. 1998).

---

[9] As noted in the Summary Judgment materials, regardless of the potential interpretation that Plaintiff's wish to place on Robert Pennicka's statements to the Chamber of Commerce, the undisputed facts show that the Defendant's workforce has not become younger since Callaway purchased the assets!

Thus, it is clear, certain testimony regarding alleged statements of Jamie Bosworth *might arguably* be admissible to assist the jury in determining whether his decision to lay-off Paul Duval was unlawful.  However, to the extent such evidence is deemed admissible in a case involving Paul Duval, [10]such statements, respectfully, clearly would be neither relevant nor admissible to assist a jury in determining whether layoffs occurring in April 2004, before Jamie Bosworth was even employed by the Company, were due to the age of those plaintiffs.  Thus, even if the alleged statements could be construed to reflect an age bias by Bosworth, since he wasn't even employed by Defendant at the time Bosworth's alleged mindset could not possibly have "infected" the April 2004 layoff decisions by other managers.  If he clearly did not infect such decisions, they can't be relevant to the reasons for the layoff of Lonzcak, Bettencourt or Behaylo.  *See* e.g.  Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 355 (6th Cir. 1998)("We must therefore determine whether a reasonable jury could conclude that Gallagher was in a position to influence the alleged decision ….")

For the same reason personnel actions taken by Bosworth after the three Plaintiffs had already been laid off, even if minimally relevant to Duval's claim, [11]

---

[10] Obviously the court cannot rule on admissibility of putative testimony at this time.  At this point, the mere fact that serious evidentiary issues will arise is a compelling argument against consolidation.  It is important that the Court be able to make evidentiary rulings that it believes are appropriate for each case, and further, that each side be able to preserve objections regarding the ruling and the inappropriateness of the ruling vis a vis a particular plaintiff.

[11] Defendant would submit, for example, that even as to Duval the changes in the sales force effectuated by Bosworth are irrelevant, or if relevant, minimally so and unduly prejudicial.  "Trial courts regularly prohibit 'me too' evidence from or about other employees who claim discriminatory treatment because it is highly prejudicial, but only slightly relevant" Reed v. National Linen Service, 182 F.3d 918, 1999 WL 407463, *7 (5th Cir.1999) (unpublished decision).  When there is no statistical evidence of disproportionate termination of older employees should be avoided. Thus, unless there was some even "suspicious" indication that a group had become younger as a result of layoffs, isolated anecdotal evidence of others who

cannot rationally demonstrate that different managers had *previously* engaged in age

discrimination.  *See* e.g. Heno v. Sprint/United Management Co.,  208 F.3d 847, 856

(10th Cir, 2000)(… the district court should carefully scrutinize the time frame in which

other alleged acts of discrimination occurred.  Discriminatory incidents which occurred

either several years before the contested action *or anytime after* are "not sufficiently

connected to the employment action in question to demonstrate pretext.") (emphasis

added).

Thus, no statement, or action by Bosworth, however relevant they may or may

not be in the case of Paul Duval, could be properly admitted to shed light on the

---

perceive they too were victims, but who did not test such proposition in a court of law, or even an administrative agency should be barred. Having other individuals recount "the isolated actions taken against them individually would be of limited probative value to show the existence of a pattern or practice," especially where this evidence was "not calculated to demonstrate a pattern or practice of discrimination" and it thus would be "irrelevant" to the plaintiff's individual claim. Moorhouse v. Boeing Co., 501 F.Supp. 390, 394 (E.D.P.A.1980).

Further, allowing such evidence would result in numerous mini-trials. Thus, what happened to other employees only is material if they too were the victim of discrimination.  The mere perception of discrimination is meaningless. That in turn means that the must be provided with the opportunity to present meaningful  evidence of the legitimate reason for each such layoff, and the plaintiff then be given an opportunity to demonstrate that such reason was pretextual.  The fact that this will lead the trial far a field from the relevant issues is particularly true if the "me too" testimony involves areas different than the plaintiff's. These layoffs all affected Chicopee based exempt personnel. There were, in addition to the decision to layoff Duval, who *was not a salesman*, in Chicopee reductions in the sales force, which was spread throughout the country.  Those layoffs of salesman were for entirely different reasons than was Duval's.  Reduction decisions in those cases would necessarily take into account such items as geographic coverage, relationships between particular salesman and major customers, and sales levels, all factors that were irrelevant to Duval's case. For purposes of this motion, Defendant would submit that even assuming *arguendo* that such evidence could arguably be found to be admissible at Duval's trial, it  would clearly be inadmissible, both as irrelevant and unduly prejudicial, in the trial of cost accountants laid-off by a different decision maker. Indeed, even assuming *arguendo* that Bosworth, who, later made the decisions regarding changes to the sales force, was stipulated to be a blatant ageist, he was not yet even working for Defendant when any other plaintiff was terminated. The court would not allow such irrelevant and prejudicial testimony, presumably, at a trial involving Gary Lonczak alone. It would be no more appropriate to allow a jury hearing a consolidated case to hear such testimony when that jury would be then be deciding, *inter alia*, whether Fry laid-off Lonczak due to his age.

reasons for the decision, for example, to layoff Behaylo.  The Court must not allow such

testimony before jurors deciding whether the reasons Dan Fry offers for terminating

Lonczak, or that Andrew Kelleher offers for laying off Bettencourt, are pretexts for age

discrimination.  In all such cases, the Court must balance the degree of relevancy

against the possibility of undue prejudice. The balance may appropriately come out

differently for different cases. If the cases are consolidated, the Court will be unable to

properly balance these issues.

     D. Requiring One Jury To Analyze Four Distinct Factual Scenarios Under The
Complex Legal Framework Of The ADEA Will Result In Jury Confusion And Extreme
Prejudice

     Consolidating age discrimination claims under the ADEA creates a particular

susceptibility to jury confusion because of the complex legal framework involved in each

case.  Although each Plaintiff raises the same legal theory of disparate treatment under

the ADEA, each claim will involve the highly complex burden shifting analysis of

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

     To succeed on his claim, *each* Plaintiff will have to prove a *prima facie* case of

age discrimination, *e.g.* (1) that he is a member of a protected class; (2) that he

performed his job satisfactorily; (3) that he suffered adverse job action; and (4) that

Defendant did not treat him age neutrally in the layoffs, or that a younger person was

retained in the same position.  Currier v. United Technologies Corp., 393 F.3d 246,

254 (1st Cir. 2004).  Assuming the Plaintiffs meet this initial burden, the Defendant must

then produce evidence showing a legitimate, non-discriminatory reason for terminating

*each* Plaintiff.  From there, *each* Plaintiff will have to put forth sufficient evidence to

show that the Defendant's proffered reason(s) were pretext and that the Defendant was actually motivated by age-discrimination.  Id.

Keeping this framework straight for just one Plaintiff is a daunting task for a juror. Adding three more sets of facts to the mix will make the jury's task exponentially more difficult and confusing.  Jurors in a consolidated trial would be called upon to undergo a four factor analysis for each Plaintiff.  Although much of the dispute in these cases rests with the fourth factor, the jurors will still have to balance four terminations with at least three decision makers and three (or more) alleged replacements.  Therefore, even the first step of the McDonnell Douglas test could have a damning prejudicial effect on the Defendant.  See Coleman, 232 F.3d at 1296; Bailey, 196 F.R.D. at 518; Walker, 2007 WL 1140423 at 4; Bernardi, 101 F.R.D. at 414.

Assuming arguendo the jurors could fairly balance four prima facie case analyses, the Defendant would then introduce evidence of legitimate, non-discriminatory reasons for the terminations specific to each individual Plaintiff.  Although the overall financial viability of the Company played a role in each termination, the Plaintiff is incorrect in its assumption that the Defendant's evidence "will be almost the same…in each case."  The Defendant did not close its doors and layoff its entire workforce, but rather, it underwent a corporate change and a partial reduction in its workforce that affected each department and each employee differently.  Therefore, the Defendant will have to specifically show why each decision was made, which will include an analysis into each of the Plaintiffs' department and position.

Finally, as if the jurors do not have enough on their plates, each Plaintiff will then have to rebut the Defendant's non-discriminatory justification relative to his claim, and

14

each Plaintiff will also have the ultimate burden of introducing sufficient evidence that the Defendant discriminated against him based on age.  Such evidence will consist of particularized allegations relating to each individual Plaintiff, which will be unfairly prejudicial, under F.R.E. Rule 403, to the Defendant with regard to the other three cases.  As explained above,

> The jury may simply resolve the confusion by considering all the evidence to pertain to all the plaintiffs' claims, even when it is relevant to only one plaintiff's case. There is tremendous danger that one or two plaintiff's unique circumstances could bias the jury against defendant generally, thus prejudicing defendant with respect to the other plaintiffs' claims.

Bailey, 196 F.R.D. at 516.

Allowing each case to proceed separately is the best possible route here because it will prejudice no one.  Each Plaintiff will have the same opportunity to present his case to the jury, and the Defendant will have a fair opportunity to defend the same.  Although the Plaintiffs argue that a consolidated trial is beneficial due to speed, judicial economy, and expense, the individual Plaintiffs would actually reap the least amount of benefit in these areas from a consolidated trial.  The Plaintiffs may be able to split some of the trial expenses, but each Plaintiff will undoubtedly spend more time at one consolidated trial then they would if they proceed separately.  Also, avoiding "me too" evidence while the matter is before the Supreme Court settles is the prudent course to avoid potential post-trial reversals, which would be extremely costly for all parties.

## IV. Conclusion

For the foregoing reasons the Defendant requests this Court deny the Plaintiffs' Motion to Consolidate, except to the extent the trials and Bettencourt and Behaylo, who were laid off at the time by the same decision-maker may properly be consolidated.

15

Respectfully submitted,


  /s/ Jay M. Presser, Esq.
Jay M. Presser, Esq.
BBO No. 405760
Counsel for Defendant
Skoler, Abbott & Presser, P.C.
One Monarch Place, Suite 2000
Springfield, Massachusetts  01144
Dated:    January 14, 2008                      Tel.:  (413) 737-4753/Fax: (413) 787-1941

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Defendant's Partial Opposition To Plaintiffs' Motion To Consolidate* was served upon the attorney of record for each other party via electronic filing, on January 14, 2008.

/s/ Jay M. Presser, Esq.<br>
Jay M. Presser, Esq.