UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GARY J. LONCZAK,<br>    Plaintiff<br><br>vs.<br><br>CALLAWAY GOLF BALL OPERATIONS, INC.,<br>    Defendant | )<br>)<br>)<br>)   CIVIL ACTION NO.: 05-30180-MAP<br>)<br>)<br>) |

**JOINT PRE-TRIAL MEMORANDUM**

1. **SUMMARY OF THE EVIDENCE**

    A.  **Plaintiff:**

    In December 2003, Callaway Golf Company purchased the assets of the former Spalding Sports Worldwide. When Callaway took over, Robert Penicka a man in his early forties, became President and CEO of the Top Flite Golf Company, whose intention was to operate as a stand-alone entity. Mr. Penicka hired and put in place a new management team which included Andrew Kelliher, Jamie Bosworth and Thomas Fry, all men in their thirties. In the Spring of 2004, Mr. Penicka spoke at a Chicopee Chamber of Commerce meeting where he appeared with his management team and made the statement that "If you all look up at the head table you will notice a lot of young faces up here and that's not by accident, that's by design, and in some cases, the people that are in the jobs they are in may not even be qualified to be in them yet."

    The Plaintiff, Gary Lonczak began working for Top Flite in 1998. Mr. Lonczak was laid off in April 2004 at the age of 50. Mr. Lonczak was a Category Logistics Manager for the Company's golf club business. He was purportedly laid off because the Company was closing its Fort Worth facility in Texas which Mr. Lonczak had done some work for. One week after the Company transferred its production of Ben Hogan Clubs to California, Mr. Lonczak was laid off. However, the Company continued to do its planning and procurement work (Mr. Lonczak's job) in Chicopee. He was replaced by Roseanne Turner, a forty-year old employee in the Information and Technology Department. The planning and procurement work continued in Chicopee until the end of 2005 and Ms. Turner remained with the Company thereafter in an IT position for which Mr. Lonczak was qualified. The evidence will show that Mr. Lonczak was terminated in violation of 29 USC §626.

**The Defendant:**

The Plaintiff in this case had worked for Spalding Sports Worldwide, Inc., which was based in Chicopee, Massachusetts. Located in Chicopee was a factory that made Top-Flite and Ben Hogan golf balls as well as the corporate offices of the company. The company sold numerous other product lines, including what is called inflatables, i.e. Spalding basketballs, footballs, volleyballs and soccer balls. It owned Etonic golf shoes, Dudley softballs, Top-Flite and Ben Hogan golf clubs, operated a golf club assembly facility in Ft. Worth Texas, and operated a manufacturing plant in Gloversville, NY. All corporate functions for the business, such as sales, finance, human resources, and legal were done by office personnel working in Chicopee. Spalding suffered severe financial problems and, in the spring of 2003, had to sell off various businesses, including Etonic and Dudley, as well as its Spalding inflatable products. In fact, the company had to sell its very name, Spalding, to another company. For a brief period it continued to operate but was forced to file for bankruptcy in June of 2003. A judge ordered that the company's assets be auctioned off.

Some of the assets of the bankrupt company were purchased by a newly-formed, wholly owned subsidiary of Callaway Golf Company in California, first called The Top-Flite Golf Company, and later called Callaway Golf Ball Operations, Inc., which is the Defendant in this case.

The Defendant hired all the former Spalding employees (other than those who left to join the company that purchased the Spalding business), including the Plaintiff. However, the new company, which began operations in September 2003, lost nearly $9 Million by the end of 2003. In 2004 it was on pace to lose even more. Part of the problem was that the number of white collar and office employees had not been reduced when much of the company's assets were sold off in spring of 2003. The manager of each area was told to review his or her own staff, and decide what staff was critical to the company's efforts going forward.

Plaintiff Gary Lonczak worked as the Category Logistics Manager for Golf Clubs for Defendant. His duties would generally include procurement of pieces for, and planning the assembly of, golf clubs. His primary responsibility was overseeing those functions for the Ben Hogan golf club line, which was assembled by employees working in Ft. Worth, Texas, and overseen by management, such as Plaintiff, based in Chicopee. Shortly after acquiring the assets of Spalding, Callaway Golf Company decided that all golf ball manufacturing, including the manufacture of Callaway brand golf balls that had been done in California, would be consolidated in Chicopee by employees of Defendant. At the same time it decided that all golf club manufacturing and assembly, including the Ben Hogan assembly previously done in Texas, would be consolidated and done in California, by employees of Callaway Golf Company. As a result the Ft. Worth facility was closed, and Plaintiff himself worked on the transition plan moving the work from Texas to California. In April 2004, with the move completed and some of Plaintiff's duties already eliminated, it was anticipated that full consolidation of the golf club work in California would be completed by June of 2004. Tom Fry, needing to try to save money,

decided that he could layoff Gary Lonczak, and cover his remaining duties with Roseanne Turner, a former Category Logistics Manager for Defendant who was, at the time, assigned to the IT (information technologies) department. The full consolidation of golf club procurement and planning took longer than anticipated, as Callaway Golf decided it wanted further review of what computer system to use for the consolidated operation. However by November 2005 the consolidation was totally complete, and Turner ceased doing any work relating to golf clubs.

2. **FACTS ESTABLISHED:**

   It is established and agreed that Callaway purchased the assets of the former Top Flite operation which manufactured golf balls in Chicopee, Massachusetts. The identity of the party is also agreed to, and it is agreed that Gary Lonczak was laid off effective April, 2004.

3. **CONTESTED ISSUES OF FACT:**

   All other material questions of fact, including the reasons for the Plaintiff's termination is in dispute.

4. **JURISDICTIONAL QUESTIONS**

   Not Applicable

5. **QUESTIONS RAISED BY PENDING MOTIONS:**

   Plaintiff does not have any pending motions.

   Defendant has filed a Motion to Preclude the Testimony of Craig Moore. This motion supplements the pending Motion to Strike the Reports of Dr. Moore.

6. **ISSUES OF LAW:**

   Plaintiff anticipates that he will file motions in limine regarding at least two issues:

   a. Whether or not the Plaintiff can introduce certain statistical evidence without expert testimony; and,

   b. To prohibit references to the Plaintiff's signing of a defective release under the Older Workers Benefits Protection Act.

   Defendant has filed motions in limine regarding at least the following issues:

   a. To preclude testimony to the jury on the issue of front pay
   b. To preclude testimony regarding back pay after 2005
   c. To preclude testimony regard statements relating to:

      a. Seniority
      b. Deadwood
      c. Any statement by James Bosworth
      d. Statements by Richard Levandowski

    d. Anecdotal evidence by other terminated employees

    e. References to cost savings

    f. To preclude testimony of damages for years for which tax returns have not been provided

    g. To preclude testimony regarding the failure to rehire or transfer Plaintiff

**7. AMENDMENTS TO PLEADINGS:**

None

**8. ANY ADDITIONAL MATTERS:**

None

**9. PROBABLE LENGTH OF TRIAL:**

Plaintiff estimates that the trial will take one week.

**10. WITNESSES:**

Plaintiffs:

1. Michael Behaylo
2. John Bettencourt
3. Paul Duval
4. Gary Lonczak
5. Keeper of the Records for Top Flite
6. Susan Silvestri
7. Craig Moore
8. Vaughn Rist
9. Robert Penicka
10. Darlene Orciuch
11. Cynthia Nunes
12. Richard Levandowski
13. Andrew Kelliher
14. Jaime Bosworth
15. Thomas Fry

16. Christine Conti
17. Sharon Lally
18. Katarzyna Zoblicka
19. David Richardson
20. Richard Gielow

Defendants:

In addition to those listed by the Plaintiff above Defendant might call the following:

1. Peter Arturi
2. Robert Bourdeau
3. Roseanne Turner
4. Christine Rousseau
5. Mary Gay

To the fullest extent possible Defendant reserves the right to call additional rebuttal witnesses or to respond to testimony from "me too" witnesses.

11. **PROPOSED EXHIBITS:**

Plaintiffs:

1. Top Flite Golf Company Financial Department Chart (Plaintiffs' Summary Judgment Exhibit No. 9)

2. John Bettencourt Resume

3. Michael Behaylo Resume

4. Personnel Record of Katarzyna Zoblicka

5. Personnel Record of Sharon Lally (Defendant's Summary Judgment Exh. No. 8)

6. Personnel Record of Michael Behaylo

7. Personnel Record of John Bettencourt

8. Personnel Action Form regarding Paul Duval (Plaintiffs' Summary Judgment Exhibit No. 20)

9. Personnel Record of James R. Gorman (Plaintiffs' Summary Judgment Exhibit No. 21)

10. Personnel Record of Scott Serois (Plaintiffs' Summary Judgment Exhibit No. 22, Defendant's Summary Judgment Exhibit No. 28)

11. Personnel Record of Roseann Turner (Plaintiffs' Summary Judgment Exhibit No. 28; Defendant's Summary Judgment Exhibit #29)

12. Production Statement for Top Flite 2002-2004 (Defendant's Summary Judgment Exhibit No. 7)

13. Top Flite Callaway's Statement of Operations 2003-2004 (Defendant's Summary Judgment Exhibit. No. 6)

14. Callaway Newspaper advertisement for Cost Accountant, 2007.

Plaintiffs reserve the right to add additional exhibits based on the positions taken by the defendant and supplementation of discovery.

**Defendant**

[The Defendant has filed various motions in limine to preclude testimony in one trial regarding the layoffs of other individuals. To the extent such motions are allowed in whole or in part, the number of exhibits would be greatly reduced.]

1. Offer letter from Defendant to Michael Behaylo, Exhibit 2[1] (Exhibit 3 from the deposition of Michael Behaylo).

2. Termination letter Exhibit 3 (Exhibit 10 from the deposition of Michael Behaylo).

3. The listing of Employees Terminated, included as Response to Plaintiff's Interrogatory No. 4, part of Exhibit 4.

4. The charts responsive to Plaintiff's Interrogatory No. 6, part of Exhibit 4.

5. Exhibit 5 (the Defendant's Answers to Plaintiff, Michael Behaylo's, Second Set of Interrogatories).

6. The relevant portions of the personnel files produced as Exhibit 1 to Second Request for Production of Documents, Exhibit 6.

7. Statement of Operations, produced as Exhibit 2 to Second Request for Production of Documents, Exhibit 6.

8. Exhibit 8 (the Personnel Action Form for Sharon Lally, produced to Plaintiff in response to his Second Request for Production of Documents and, depending on the evidence allowed, other portions of previously produced Lally Personnel file.

---

[1]Except as noted the Exhibit No. refers to the exhibit number of the document as filed with the Materials in Support of Defendant's Motion for Summary Judgment.

9. Bettencourt Quick Zoom Report 1 Exhibit 10 (Exhibit 2 from the deposition of John Bettencourt).

10. Bettencourt Quick Zoom Report Exhibit 11 (Exhibit 3 from the deposition of John Bettencourt).

11. Other records of interim earnings produced by Plaintiff(s) directly, or produced by Dr. Craig Moore in response to subpoena.

12. Printout of Company Records, if required, showing what benefits Plaintiff was not receiving at the time of his layoff.

13. Organizational Chart for Finance Department - Exhibit 12 (Exhibit 6 from deposition of John Bettencourt).

14. List of Finance Department Employees, showing age and position, effective January 2004.

15. List of Finance Department Employees remaining, showing age and position, effective January 1, 2006.

16. Hire Letter for John Bettencourt, Exhibit 13 (Exhibit 12 from the deposition of John Bettencourt).

17. Termination Letter for John Bettencourt Exhibit 14 (Exhibit 14 from the deposition of John Bettencourt).

18. Resume of Paul Duval, Exhibit 17 (Exhibit 6 from the deposition of Paul Duval).

19. E-mail reflecting change of duties for Paul Duval, Exhibit 18 (Exhibit 9 from the deposition of Paul Duval).

20. Portions of Paul Duval's Personnel File, including Exhibit 19 (Exhibit 10 from the deposition of Paul Duval).

21. Hire Letter for Paul Duval, Exhibit 21 (Exhibit 12 from the deposition of Paul Duval).

22. Termination Letter for Paul Duval.

23. Sworn charge of discrimination, Exhibit 22 (Exhibit 15 from the deposition of Paul Duval).

24. Hire Letter Gary Lonczak, Exhibit 25 (Exhibit 1 from the deposition of Gary J. Lonczak).

25. Termination Letter Gary Lonczak, Exhibit 26 (Exhibit 8 from the deposition of Gary J. Lonczak).

26. 2004 Evaluation of Gary Lonczak.

27. 2004 Evaluation of Roseanne Turner, and other responsive materials from personnel file of Roseanne Turner, including Ex. 29.

28. Documents from personnel file of Richard Levandowski produced in discovery.

29. June 2, 2004 listing of Employees laid off April 30, 2004, Exhibit 39.

30. June 2, 2004 Charts Reflecting pre-Layoff and post-layoff employee profile, Exhibit 39.

31. Potentially relevant documents from personnel file of Scott Sirois, including Exhibit 26, produced in response to Michael Behaylo's Second Request for Production of Documents.

32. Termination Notices sent to employees regarding consolidation.

33. Response to Plaintiff's Request for Production of Documents No. 4, and Supplement to Exhibit 4 to document request, hand-delivered to Plaintiff May 16, 2006.

34. Staffing Lists of Employees, showing position and ages.

35. Expert Report of Dr. Craig Moore, if allowed to testify.

36. (if me too testimony is allowed by Field Sales Personnel and managers) the Personnel Files of Sales Field Personnel Laid off or not laid off, and other evidence reflecting the reductions in force effecting field sales.

Defendant reserves the right to add additional exhibits based on the testimony offered and the positions taken by the plaintiff and supplementation of discovery.

**12.   OBJECTIONS REGARDING FEDERAL CIVIL PROCEDURES RULE 26:**

Defendant has filed Motions to Strike Expert Report and Motion to Preclude the Testimony of Expert Witness Craig Moore.

| THE PLAINTIFF BY | THE DEFENDANT BY |
|---|---|
| By: ___/ S / Maurice M. Cahillane___ | ___/ S / Jay M. Presser___ |
| Their attorney | Its attorney |
| Maurice M. Cahillane, Esq., BBO#069660 | Jay M. Presser, Esq.; BBO No. 405760 |
| Egan, Flanagan and Cohen, P.C. | Skoler, Abbott & Presser, P.C. |
| 67 Market Street | One Monarch Place, Suite 2000 |
| Springfield, Massachusetts 01103 | Springfield, Massachusetts 01144 |
| Tel: 413-737-0260; Fax: 413-737-0121 | Tel: 413-737-4753; Fax: 413-787-1941 |
| Dated: ___2/21/2008___ | Date: ___2/21/2008___ |

12084-050156\Document in ProLaw