UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GARY J. LONCZAK, | ) |
| | ) |
| | ) |
| vs. | ) CIVIL ACTION NO.: 05-30180-KPN |
| | ) |
| CALLAWAY GOLF BALL OPERATIONS, INC. | ) |
| Defendant | ) |
| | ) |

**PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANT'S
MOTION IN LIMINE TO PRECLUDE THE PLAINTIFFS FROM
OFFERING ANY EVIDENCE OF FRONT PAY TO THE JURY**

Plaintiff agrees with the Defendant that under the ADEA front pay is an equitable remedy whose treatment lies in the discretion of the Court. If the Court reserves the front pay issue for itself, the Plaintiff does not intend to present front pay issues to the jury. However, Plaintiff believes that the Court should submit the question to the jury and follow the jury's determination. Such a decision would enhance judicial economy since it would negate the need for additional hearing and testimony before the judge regarding issues as to the amount of front pay. It is quite common for front pay issues to be submitted to a jury in discrimination cases, and there is no prohibition under First Circuit law from the jury hearing in making determination even if it were only an advisory determination.

                                                              THE PLAINTIFF, LONCZAK
                                                               BY HIS ATTORNEY

Dated: February 25, 2008        /S/ Maurice M. Cahillane
                                                      Maurice M. Cahillane, Esq.
                                                      EGAN, FLANAGAN AND COHEN, P.C.
                                                      67 Market Street - Post Office Box 9035
                                                      Springfield, MA 01102
                                                      (413) 737-0260; Fax: (413) 737-0121

BBO# 069660

CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing document was served this 25nd day of February, 2008, on all parties, by electronic delivery to Jay M. Presser, Esq., Skoler, Abbott & Presser, 1 Monarch Place, Springfield, MA 01144.

                                        /S/ Maurice M. Cahillane
                                        Maurice M. Cahillane, Esquire

11842-040948\Document in ProLaw

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAUL DUVAL,                                          )
        Plaintiff                                    )
                                                     )
vs.                                                  ) CIVIL ACTION NO.: 05-30181-KPN
                                                     )
CALLAWAY GOLF BALL OPERATIONS, INC.,                 )
        Defendant                                    )

**OPPOSITION TO DEFENDANT'S MOTION TO PRECLUDE TESTIMONY OF PLAINTIFF'S EXPERT AND TO EXCLUDE PLAINTIFF'S EXPERT REPORT**

    Now comes the Plaintiff and opposes the Defendant's above captioned motion and states as follows:

    1. The Plaintiff does not intend to introduce Dr. Moore's actual report so that is not at issue.

    2. Plaintiff has already responded to the Defendant's prior motion to strike Dr. Moore's expert report and believes that opposition adequately covers these issues. As far as the Plaintiff is aware, all of the technical details that had not been previously complied with have since been complied with. Defendant's continue to nitpick over Dr. Moore's description of his compensation claiming that it is insufficient. Plaintiff does not even have a bill from Dr. Moore yet. However, if the Court wishes, and deems it appropriate, it will instruct Dr. Moore to provide a bill prior to trial.

    3. The Defendant's general attempt to exclude Dr. Moore's testimony under the principles in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) is inappropriate. The *Daubert* decision and similar cases, is designed to prevent the testimony of experts on matters and opinions that have not been reasonably established as having a basis. This is almost

always a matter of scientific, medical or technical expertise. The Defendant's objections to Dr. Moore are that, in his original report, he made mistakes sometimes in mathematical errors, sometimes in assumptions about what was being received or not received, and sometimes by putting the wrong number in one part of his report or transposing a number from another report inadvertently. This is completely different from any issue under *Daubert* and the testimony of an economist as to the financial losses of an individual is an entirely typical matter in discrimination cases. Particular objections to either Dr. Moore's method or matters that he cites as losses that the Defendant disputes can be handled in each individual instance.

4. Defendant primarily objects to the expert's inclusion of lost opportunities, essentially in the form of benefits that may or may not have been used by the individual. This is not a correct interpretation of damages available under the ADEA. Defendant correctly points out that an ADEA award is to put the Plaintiff in the economic position he would have occupied but for the discrimination. *Kolb v. Goldring, Inc.*, 694 F.2d, 869, 872 (1st Cir. 1982). That standard, in and of itself, would certainly include as a general principal available benefits that may or may not have been used. The standard measure of damages is that the Plaintiff is entitled to lost pay or back wages determined by the difference between his salary plus any incidental benefits the employee would have received *or been entitled to* but for the violation of the law and the compensation or benefits actually received from other sources. See e.g., *Marshall v. Goodyear Tire and Rubber Co.*, 554 F.2d 730 (5th Cir. 1977); *Cotes v. National Cash Register Co.*, 433 F.Supp. 655 (W.D. VA 1977) and *Bishop v. Jelleff Associates*, 398 F.Supp. 579 (D. DC 1974).

5. Defendant correctly points out that the First Circuit has never ruled that opportunity costs could not be awarded in an ADEA award. Some courts have sometime excluded these but these are usually individual determinations in the particular circumstances of

the cited cases where the general standard continues to be how to make the employee whole. Inclusion of the cost of benefits rather than replacement costs is not is not a flawed methodology. For instance, in a situation where the employee after having been terminated picked up the health insurance of his spouse, both the employee and his household have suffered a loss.  First, the spouse, in all likelihood, has a direct cost in paying for some of the additional health insurance. Secondly, the lost opportunity of having the Plaintiff have his own health insurance, forces the spouse into a position where he or she becomes a more expensive employee to their employer. Many family health insurance plans cost as much as $12,000 to $15,000 per year. To the average wage earner, this can often be as much as twenty percent of their salary.  The employee who now must take that insurance loses a significant ability to negotiate a higher salary with their employer in that the employer must now expend a larger amount of money on that employee.  In addition, there is at all times the prospect that the spouse will lose employment, or lose insurance or find the insurance has become prohibitively expensive.  This situation is little different than life insurance, the cost of which is recoverable even though the employee did not die and receive the benefit.

6. Defendants point to a number of mistakes, most of which Dr. Moore admitted he had made in his report.  These are items that can be definitively corrected by the addition, elimination or substitution of a number and hardly constitute an unfair surprise or lying in wait. In this respect, it should be noted that with respect to back pay in an employment discrimination case, the final number which is the amount of damages, is always a moving target as it can be affected at any time by what the employee is receiving in his present job, whether he should lose his present job, or even whether the company had increased the salary for the position that he had previously held.  The only point in time when the back pay becomes a final definitive number, is

the date of trial. For instances, in some cases, Dr. Moore assumed that Callaway, when it took over Top Flite, had provided the same kind of benefits as Spalding had. That may have been a misassumption in and of itself but it is easily correctable and it is highly unlikely that it would make a significant difference in Dr. Moore's opinion. Nor, is there anything necessarily inappropriate about using a different methodology for different cases given that different information may be available and the plaintiff may face different situations. If in fact it had occurred that one of these plaintiffs had become uninsured and suffered a million dollar health care loss, the Defendant's would most assuredly be arguing that they should not be held responsible for the replacement cost under the actual loss theory. Some of the other mistakes about which the defendants complain are simply of the typographical or inadvertent nature. For example, in one instance in Dr. Moore's report regarding Michael Behaylo, he included a chart which showed the salary of another plaintiff which was much higher. Obviously, Dr. Moore is not going to testify that Mr. Behaylo had that salary, it was simply a mistake on the report which can be easily corrected and whose affect is obvious. It is also the case that Dr. Moore, as he admitted, had without meaning to, included the defendant's FICA match as a benefit calculation in some of the reports. He admitted that this was not a benefit and indicated that he would remove it.

   7. With respect to Mr. Behaylo and to Mr. Bettencourt as well, the defendant objects to Dr. Moore's use of their net income from self-employment following their terminations. This is based on the truly ridiculous theory that they should not be allowed to deduct expenses that they are legally permitted to deduct on their tax returns from their gross income. Defendant states that "courts do not allow deductions for the self employed that are not available to wage earner to reduce interim earnings." citing, *Teichgraeder v. Memorial Union Corp. of Emporia*

4

*State University*, 932 F.Supp. 1263, 1266 (D. KS. 1966). The case says no such thing, and the defendant's statement is a huge distortion of the holding by that Court. *Teichgraeder* simply says that inquiry can be made (this was a discovery dispute) as to whether or not the self employed plaintiff's business received some other kind of benefit that would not show from the net earnings or net salary itself. In a similar vein, defendant makes a totally unsubstantiated assertion that Mr. Behaylo was deducting car expenses that were not related to his business. The Defendant's entire footnote 17 assumes that Dr. Moore should have assumed that Mr. Behaylo's statement as to what his business expenses were was false and that his stated business expenses were personal expenses. Defendant present no basis at all for attacking Mr. Behaylo's expenses, and it is absurd to suggest that a self-employed realtor would not have significant vehicle, cell phone and computer expenses.

The other deficiencies that the defendants cite are in a similar vein of simple mistakes that are easily correctable. For instance, in the case of Mr. Bettencourt and Mr. Duval, Dr. Moore included vacation pay they received on termination as part of their annual salary because he was going off of the W2 statements that they had received from the Company. This is an easily correctible mistake and an understandable one given that this was a statement of a salary earned by the individual from the Company itself, which did not identify part of it as vacation pay.

Lastly, the defendant attacks Dr. Moore's treatment of Mr. Lonczak's situation because he relied on Mr. Lonczak's tax returns which show zero net income. They further attack him for relying on Mr. Lonczak's tax returns and taking his word regarding the condition of the business. It would be absurd to suggest that Dr. Moore should be cross examining the Plaintiffs as to their tax returns or conducting an independent investigation as to their business interests. The fact of

5

the matter is the evidence will show that Mr. Lonczak has not obtained any benefit from his new business that would reduce his wage losses. Far from it, he has suffered enormous losses. If the defendant's preferred theory of "actual losses" was utilized in Mr. Lonczak's case, his damages would be increased by hundreds of thousands in the form of debt that he now has that he did not previously have.

THE PLAINTIFF, PAUL DUVAL
BY HIS ATTORNEY

Dated: February 25, 2008

/S/ Maurice M. Cahillane
Maurice M. Cahillane, Esq.
EGAN, FLANAGAN AND COHEN, P.C.
67 Market Street - Post Office Box 9035
Springfield, MA 01102
(413) 737-0260; Fax: (413) 737-0121
BBO# 069660

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served this 25nd day of February, 2008, on all parties, by electronic delivery to Jay M. Presser, Esq., Skoler, Abbott & Presser, 1 Monarch Place, Springfield, MA 01144.

/S/ Maurice M. Cahillane
Maurice M. Cahillane, Esquire

12084-050156\Document in ProLaw